*18*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
## -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

JUL 28 2000

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| MANTEO SHRIMP CORPORATION | § | |
| and F/V DAVID M. TOWER, | § | |
|     Third Party Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-97-244 |
| | § | |
| GEORGE G. ZIMMERMAN & CO. | § | |
| INC., GLOBAL ACCIDENT LINE | § | |
| SLIP, INC., and BURK & ASSOCIATES, | § | |
| INC. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is Third Party Defendant George Zimmerman's Motion to Dismiss for Lack of In Personam Jurisdiction Pursuant to Fed. R. Civ. Pr. 12 (b)(2).  (Docket No. 8). Plaintiff Manteo Shrimp Corporation has filed a response. (Docket No 14).

### BACKGROUND

Manteo Shrimp Corporation, a Texas corporation, owns the F/V David M. Tower, a shrimp trawler operating out of Port Isabel, Texas. Zimmerman, according to an affidavit attached as Exhibit A to his Motion to Dismiss, is currently a resident of Florida. Formerly, according to Manteo's Second Amended Third Party Complaint (Docket No. 15), he was a resident of New Jersey.

Manteo's Second Amended Third Party Complaint (Paragraph III) alleges that one of the parties it dealt with in obtaining insurance was Tower Insurance Agency. However, its Response to Zimmerman's Motion to Dismiss claims that it dealt with Kingspoint Insurance Agency. This discrepancy, albeit confusing, is irrelevant to the issues raised by Zimmerman in his Motion to

Dismiss.

In 1993, Manteo approached Heinze & Associates, an insurance agency, to buy a Maritime Employer ERISA Benefit Plan. This plan was to be administered by Burk & Associates in San Antonio, Texas. Heinze placed this coverage through Tower Insurance Agency. Tower purchased the insurance through George G. Zimmerman & Co. Inc. (GGZ) in New Jersey. GGZ then placed the risk with Global Accident Line Slip, Inc.(GALS), the manager of a reinsurance pool consisting of seven foreign insurance companies. The term of the policy was November 27, 1993 to September 15, 1994.

A crewman aboard David M. Tower, Ruben Ortega, was injured in February 1994. Manteo presented the claim, requesting that it be adjusted and paid. This was never done.  Upon making inquiries about this claim, Manteo was told that GALS was no longer representing the seven foreign insurance companies.

Manteo later found out that GGZ and GALS had ceased doing business in 1997, and had released the premiums in their possession to the insurance pool members. This suit followed. Zimmerman was the chairman of both GGZ and GALS. According to his affidavit and his deposition, which are attached as an exhibit to Third Party Plaintiff's Response to Third Party Defendant's Motion to Dismiss for Lack of In Personam Jurisdiction (Docket No. 14), Zimmerman had no personal involvement in placing the Manteo account. Manteo has not disputed this.

## MANTEO'S CLAIMS AGAINST ZIMMERMAN

In its Second Amended Third Party Complaint, Manteo alleges that GGZ and GALS were

2

surplus lines agents.[1] Manteo also alleges that GGZ was a reinsurance intermediary.[2] Manteo goes on to claim that Zimmerman operated GGZ and GALS as his alter egos. According to Manteo, both entities were under capitalized and Zimmerman perpetrated a fraud upon Manteo by selling it a worthless insurance policy.

In its response to Zimmerman's Motion to Dismiss, Manteo states that both GGZ and GALS are no longer in business and that Zimmerman testified in his deposition that he doesn't know where the corporate records of those companies are located.

ZIMMERMAN'S MOTION TO DISMISS

In his Memorandum of Law in Support of Third- Party Defendant George Zimmerman's Motion to Dismiss the Second Amended Third-Party Complaint for Lack of in Personam Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 9), Zimmerman raises two issues. First, he argues that his contacts with the State of Texas are insufficient to permit the exercise of either general or specific jurisdiction over him. Second, he argues that he is not the alter ego of GGZ or GALS.

RECOMMENDATION

It is axiomatic that in order to exercise personal jurisdiction over a non resident defendant such as Zimmerman, the court must be satisfied that the non resident had minimum contacts with Texas and that it would be fair and reasonable to require the non resident to appear in a Texas court. *Wilson v Belin*, 20 F.3d 644, 649 (5th Cir. 1994), cert. denied, 513 U.S. 930 (1994).

---

[1] Tex. Ins. Code Article 1.14-2

[2] Tex. Ins. Code Article 21.07-7

3

The evidence in this case regarding Zimmerman's contacts with Texas is set forth in his deposition at pages 70-80. In summary, Zimmerman's testimony was that in early 1994 he went to Houston, Texas on business unrelated to the insurance business. Zimmerman stated that he was an investor in a biotechnical firm located in the Woodlands, a community just north of Houston. His testimony (p. 72 line 8 through p. 73 line 6) was that the principal purpose of his trip to Houston was to discuss a default situation with the biotechnical company.

Zimmerman traveled to Houston with a Mr. Sharkey, a director of GGZ. While in Houston, Zimmerman met with different insurance companies, including Kingspoint. From page 74 line 3 to page 77 line 12, of his deposition, Zimmerman discussed the insurance aspects of his trip to Houston stating that he was there for about a day and a half trying to generate business in Houston. (p. 74 lines 9-20). Zimmerman also testified that in the five years prior to the 1994 Houston trip he had made one other trip to Houston on behalf of GGZ. (p. 75 line 23 to p. 76 line 9).

The due process clause of the 14th Amendment permits the exercise of personal jurisdiction over a non resident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). "The 'minimum contacts' aspect of this analysis can be established through 'contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Id.* at 336. Specific jurisdiction exists when the non resident defendant's contacts with the forum state arise from, or are directly related to the cause of action. *Id.* at 336. General jurisdiction exists

4

when a defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic. *Id*. at 336.

There is nothing in the record before the court which would support the exercise of specific personal jurisdiction over Zimmerman, *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994), since he had nothing to do with placing the Manteo risk. His 1994 trip to Houston was subsequent to the placing of that risk.

The remaining question is whether Zimmerman's contacts with Texas are sufficient to justify the exercise of general jurisdiction over him. In *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994), the Court held that the defendants' contacts were not sufficient enough to give rise to general jurisdiction. The Court found the following factors significant in determining that general jurisdiction did not exist in this case: (1) the defendants never made all or even a substantial part of their business decisions in Texas, (2) the defendants did not keep bank accounts in Texas, (3) the defendants did not hold directors' meetings in Texas, and (4) the defendants did not maintain any files in Texas. The defendants' activities which included a few trips to Texas for interviews, three books that were written by the defendant which were circulated in Texas, and a discussion with a banking firm in Texas on behalf of a non resident corporation, were not enough contacts according to the Fifth Circuit to establish general jurisdiction.

In reference to general jurisdiction in the case at hand, Zimmerman's testimony, uncontradicted by Manteo, is that he made two brief trips to Houston. Both trips had some connection with the insurance business. Both trips were on behalf of GGZ. These facts seem insufficient to subject Zimmerman to general jurisdiction, as they are not enough contacts to be considered continuous and systematic with Texas.

5

It is **RECOMMENDED** that Zimmerman's Motion to Dismiss be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 27th day of July, 2000 .

John Wm. Black
United States Magistrate Judge

6